USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: DEC 10 2014

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE UNION CENTRAL LIFE INSURANCE
COMPANY, et al.,

         Plaintiffs,

    -against-

CREDIT SUISSE SECURITIES (USA), LLC,
et al.,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>MEMORANDUM DECISION</u>
<u>AND ORDER</u>

11 Civ. 2327 (GBD)

GEORGE B. DANIELS, United States District Judge:

    Plaintiffs The Union Central Life Insurance Company, Ameritas Life Insurance Corp., and

Acacia Life Insurance Company (collectively, "Plaintiffs") brought this action, claiming violations

of state and federal law for alleged misrepresentations and omissions made in connection with the

sale of residential mortgage-backed securities ("RMBS" or the "Certificates"). (Am. Compl., ECF

No. 43.)  Plaintiffs asserted claims for common law fraud; unjust enrichment; and aiding and

abetting, as well as claims under Sections 10(b) (and SEC Rule 10b-5 promulgated thereunder),

20(a), and 20(b) of the Securities Exchange Act of 1934 (the "Exchange Act").  (*Id.* ¶¶ 176-223.)

Defendants Credit Suisse Securities (USA), LLC, Credit Suisse First Boston Mortgage Securities

Corp., DLJ Mortgage Capital, Inc. (collectively, "CSFB"), and Individual Defendants Andrew A.

Kimura, Jeffrey A. Altabef, Evelyn Echevarria, Michael A. Marriott, Thomas Zingalli, and Bruce

S. Kaiserman (together with CSFB, the "Defendants") moved to dismiss the Amended Complaint,

with prejudice, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

(Motion to Dismiss, ECF No. 46.)  By order dated March 29, 2013, this Court granted Defendants'

motion to dismiss and permitted Plaintiffs to seek leave to amend their Amended Complaint, if amendment would not be futile. (Order, ECF No. 69 at 19.)

Plaintiffs requested leave to amend by letter and provided this Court with a Proposed Second Amended Complaint ("PSAC"). (Ex. 1 to Pls.' August 14, 2014 Letter ("Letter Mot."), ECF No. 72.)  The PSAC alleges the same causes of action as contained in the original Amended Complaint, and adds an allegation of scheme liability under subsections (a) and (c) of Rule 10b-5, 17 C.F.R. § 240.10b-5. (*See* PSAC ¶¶ 402, 406.) Defendants oppose Plaintiffs' request and argue that leave to amend should be denied as futile because Plaintiffs' allegations remain insufficient as a matter of law. (Ex. 1 to Defs.' August 14, 2014 Letter ("Opp'n"), ECF No. 73.)  Plaintiffs' request for leave to amend is DENIED.

## LEGAL STANDARD

Courts should freely permit plaintiffs leave to amend when justice so requires.  Fed. R. Civ. P. 15(a)(2).  But by its terms, this rule is not absolute.  The Supreme Court long ago identified reasons "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." that justify denying a movant leave to amend. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Leave to file an amended pleading should be denied when the amendment would be futile. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 71 (2d Cir. 2012) (citing *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 127 (2d Cir. 2007)).  A proposed amendment is futile when it "could not withstand a motion to dismiss pursuant to [Rule] 12(b)(6)." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)).

2

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Rather, to state a facially plausible claim, *Iqbal* requires a party to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* For the purposes of a 12(b)(6) motion, the plaintiff's well-pleaded facts are assumed to be true and all reasonable inferences therefrom are construed in the light most favorable to the plaintiff, the non-moving party. *Arar v. Ashcroft*, 585 F.3d 559, 567 (2d Cir. 2009) (citing *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007)). Allegations of fraud must comply with Federal Rule of Civil Procedure 9(b) (requiring that the circumstances constituting the alleged fraud be "state[d] with particularity"), and allegations of securities fraud in particular are also subject to the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), *see* 15 U.S.C. § 78u-4(b)(2) (requiring, *inter alia*, that the plaintiff "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind").

## I.   Counts I (common law fraud) and IV (§ 10(b) and Rule 10b-5 violations)

This Court's prior decision dismissed the common law fraud and Section 10(b) and Rule 10b-5 claims because Plaintiffs failed to adequately plead scienter. (Order at 10-15, 18.) Under New York law, the elements of a common law fraud claim are: "a representation of fact, which is untrue and either known by defendant to be untrue or recklessly made, which is offered to deceive and to induce the other party to act upon it, and which causes injury." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104 (2d Cir. 2001). Stating a claim under Section 10(b)

3

of the Exchange Act and Rule 10b-5(b) requires a showing of: "(i) a material misrepresentation or omission; (ii) scienter; (iii) 'a connection with the purchase or sale of a security[;]' (iv) reliance by the plaintiff(s); (v) economic loss; and (vi) loss causation." *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 158 (2d Cir. 2012) (alteration in original) (quoting *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010)). Scienter—"the defendant's intention to deceive, manipulate, or defraud," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (internal quotation marks omitted)—is therefore a necessary component of both claims. *See King Cnty., Wash. v. IKB Deutsche Industriebank AG*, 916 F. Supp. 2d 442, 447 (S.D.N.Y. 2013) ("The standard for evaluating whether plaintiffs have presented sufficient evidence of scienter is the same under New York common law as it is under Section 10(b) of the [Exchange Act]."). Because Plaintiffs have not pleaded facts with particularity that Defendants engaged in the alleged misrepresentations or omissions with the requisite scienter,[1] the common law fraud and § 10(b) and Rule 10b-5 claims must be dismissed.

A. Due Diligence Reviews

Plaintiffs claim that they have pleaded facts which demonstrate a strong inference of scienter because, through the diligence conducted by Clayton Holdings, LLC; Ocwen Financial Corp.; and Lydian Data Services, LLC, Defendants allegedly had "actual knowledge" that loan originators were abandoning underwriting guidelines and were nonetheless securitizing defective

---

[1] "The requisite scienter can be established by alleging facts to show either (1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co. ("ECA")*, 553 F.3d 187, 198 (2d Cir. 2009). With regards to the first prong, the PSAC describes the general profit motives behind re-securitization of an instrument (collateralized debt obligations) that Plaintiffs did not even purchase, and merely identifies Defendants' allegedly false statements concerning compliance with underwriting guidelines. (*See* Letter Mot. at 10-11 (citing PSAC ¶¶ 62-64, 295-97, 348).) Neither of these allegations constitute the concrete, personal benefit resulting from the claimed fraud that is necessary to show motive and opportunity, let alone any analogy to the insider trading cases that Plaintiffs endeavor to make. *See ECA*, 553 F.3d at 198; (Letter Mot. at 10-11). The focus of the analysis is therefore on Plaintiffs' attempt to show scienter through the second prong. (*See, e.g.*, Letter Mot. at 1 ("Defendants *routinely and intentionally waived loans they knew to be defective* into the RMBS they sold to Plaintiffs and other investors.") (emphasis added)).

loans. (Letter Mot. at 5-7.)  Contrary to Plaintiffs' description, the additional allegations do not "suppl[y] previously missing information," but rather persist in drawing unsubstantiated conclusions from the due diligence firms' reviews.  (*See* Letter Mot. at 6; PSAC ¶¶ 87-148.)

Like the Amended Complaint, the PSAC fails to allege "that Clayton did diligence *on any of the loans underlying the securitizations at issue in this case* or provided information *with respect to those loans* to Defendants." (*See* Order at 13 (emphasis added).)  According to Plaintiffs, the Clayton Trending Report spanning from first quarter 2006 to second quarter 2007[2] shows that: (i) "more than 32% of the sampled loans (18,026 out of 56,306) did not meet the applicable underwriting standards"; (ii) "Clayton reported this 32% non-compliance rate to Defendants"; and (iii) CSFB "waived 33.4% of these defective loans (6,021 out of 12,005) into RMBS Trusts that defendants were securitizing and selling to investors, including Plaintiffs, during this time period." (PSAC ¶ 119.)  Assuming that these allegations are true, they still fall short of the particularized facts required to allege scienter because Plaintiffs have not identified in this report *a single loan backing the Certificates at issue* that did not meet the governing underwriting standards, nor have they alleged that Defendants were made aware of such a defective loan.  Plaintiffs' mere allegation that Defendants waived non-compliant loans into RMBS trusts that were securitized and sold to investors, "including Plaintiffs," is insufficient to show that the results reflected in the Clayton Trending Report are applicable to the instant action.  (*See* PSAC ¶¶ 100, 102, 104, 108, 110, 117.) For instance, Plaintiffs plead no facts to show why the loans backing the Certificates do not instead fall within the approximately 68% of loans on which Clayton performed due diligence and found

---

[2] Plaintiffs do not explain how Clayton's due diligence, conducted from January 2006 to June 2007 on loan pools CSFB was acquiring during this time frame, would show that Defendants knew that they were securitizing defective loans for purposes of the eight Certificates that were issued in 2005 (CSFB 2005-FIX1 M4; CSFB 2005-FIX1 M5; CSFB 2005-FIX1 M6; CSFB 2005-1 CB3; CSFB 2005-7 CB1; CSFB 2005-7 CB2; CSFB 2005-6 CB1; and CSFB 2005-10 CB1). (*See* PSAC ¶ 32.)

to be compliant. (*See* PSAC ¶ 119.) Moreover, Plaintiffs' claim that Defendants securitized allegedly defective loans contemporaneous with Clayton's due diligence, and that Plaintiffs also purchased Certificates from Defendants during the same time period, does not demonstrate that the loans underlying Plaintiffs' Certificates were likewise defective. (*See* PSAC ¶¶ 106, 112.)

Similarly, Ocwen and Lydian's due diligence findings fail to support an inference of scienter because Plaintiffs have not pleaded with particularity that these findings pertain to the loans in this case. The PSAC aggregates general statements from employees of these two firms concerning the scope of their reviews in an effort to show scienter. Plaintiffs allege that Ocwen and Lydian's diligence revealed that Defendants engaged in a "standard practice" of waiving in loans that did not comply with underwriting guidelines and that Defendants therefore knew that the loans they securitized and sold to Plaintiffs were also defective. (*See* PSAC ¶¶ 132, 148.) The employee statements describe in general terms the red flags the firms discovered, the reports they submitted to CSFB, and CSFB's instructions to continue to approve defective loans. (*See, e.g.*, ¶¶ 125-126, 142-143.) Defendants argue, correctly, that scienter has not been adequately alleged given the absence of facts relating to the diligence that was performed on the loans backing the Certificates—for example, which loans were diligenced and which underwriting guidelines were applied—and therefore Plaintiffs have not connected the employees' statements to the Certificates Plaintiffs purchased. (*See* Opp'n at 4); *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000) ("Where plaintiffs contend defendants had access to [facts contrary to public statements], they must specifically identify the reports or statements containing this information."), *cert. denied*, 531 U.S. 1012 (2000); *Woori Bank v. RBS Sec., Inc.*, 910 F. Supp. 2d 697, 704 (S.D.N.Y. 2012) (emphasis added) (declining to find scienter where plaintiffs did not "tie the [diligence] report and

other alleged facts about the defendants' knowledge of inadequate mortgage underwriting *to the specific offerings in th[at] case*").

Plaintiffs have confused the quantity of their allegations with quality, and have ignored this Court's previous warning that "general allegations that Defendants did their own diligence and therefore knew that the underlying loans did not comply with underwriting guidelines are insufficient because they lack the necessary specificity." (*See* Order at 13.)   The allegations relating to Clayton, Ocwen, and Lydian's findings do not support Plaintiffs' claim that Defendants actually knew that originators for the subject loans had abandoned their underwriting guidelines, and therefore an "intention to deceive, manipulate, or defraud" has not been shown. *See Tellabs*, 551 U.S. at 313.[3]

B.  CSFB's Internal Documents

Plaintiffs further allege that Defendants knew that they were securitizing defective loans because, in internal CSFB documents, company "insiders recognized and discussed the pervasive non-compliance with underwriting standards, as well as the large quantities of defective loans that continuously flowed into CSFB's securitization channels." (Letter Mot. at 7 (citing PSAC ¶¶ 149-161, 169-176, 183-188).)   However, similar to the Amended Complaint, Plaintiffs do not provide contextual facts in the PSAC that would link the discussions in these additional documents to the loans that were securitized in this case.[4]   As a result, this Court cannot find that scienter has been adequately pleaded through the contents of these documents under either Rule 9(b) or the PSLRA.

---

[3] For the same reasons, the allegations relating to the loan originators' alleged noncompliance with underwriting guidelines are inadequate to show scienter. (*See* PSAC ¶¶ 181-261.)   Merely alleging that the loans contained in certain trusts came from originators with improper underwriting practices, without pleading facts to show that Defendants were informed of these problems with respect to the loans at issue, is insufficient. (*See, e.g.*, PSAC ¶¶ 218, 231, 252.)   Indeed, Plaintiffs conclusorily allege that Defendants knew of the originators' "wrongful conduct and abandonment of underwriting standards . . . when they securitized the defective loans backing the subject Trusts, because Defendants received due diligence reports conveying this inside information." (*See* PSAC ¶ 181.)

[4] *See, e.g.*, PSAC ¶ 158 (February 13-14, 2007 email concerning a waiver for an unidentified loan for a janitor who was purportedly "making 76K a year"); *id.* ¶ 169 (January 19, 2007 email from CSFB's Chief Credit Risk Officer

C.  FCIC Report and New York Attorney General Suit

The findings contained in the January 2011 report entitled "The Financial Crisis Inquiry Report: Final Report of the National Commission on the Causes of the Financial and Economic Crisis in the United States" ("FCIC Report") and in the November 20, 2012 complaint filed by the New York Attorney General ("NYAG action") are also insufficiently particular to support a strong inference of scienter.  (*See* PSAC ¶¶ 4, 85-91, 262-267.)  Plaintiffs' allegations with respect to the conclusions of the FCIC Report—which do not concern any specific loans or Certificates—may show that CSFB waived defective loans into its securitizations, but not necessarily that this practice occurred here.  As explained in Section I.A, *supra*, a finding that "32% of the loans that Clayton reviewed for CSFB during 2006 through June 2007 failed to meet the underwriting guidelines" does not establish that the loans underlying Plaintiffs' Certificates similarly failed to meet the applicable underwriting standards, let alone that Defendants' waiver of defective (and unidentified) loans constitutes an actionable material omission in this case.  (*See* PSAC ¶¶ 88, 91; *see also* PSAC ¶ 91 (contending, without any supporting factual allegation, that the FCIC Report's findings regarding omissions in certain prospectuses "apply to the Certificates purchased by Union Central").)  In the same manner, conclusorily pleading that the NYAG action "encompasses and identifies the practices relating to all seven of the RMBS Certificates that CSFB sold to Union Central in 2006 and 2007" amounts to nothing more than Plaintiffs' attempt to ascribe general allegations concerning defective loans and flawed underwriting practices to the specific securitizations that took place in this case.  (*See* PSAC ¶¶ 263-265); *see also Rombach v. Chang*, 355 F.3d 164, 176 (2d Cir. 2004) (alteration in original) (A "'pleading technique [that] couple[s]

---

explaining that a quality control review on certain unidentified loans would be "a lot" and "very costly"); *id.* ¶¶ 82, 183 (January 18, 2007 email by the Managing Director of CSFB's Structured Products Group noting that "the closer we get to loan origination, the worse the performance—both in terms of delq/default, and just the underwriting itself.").

a factual statement with a conclusory allegation of fraudulent intent' is insufficient to 'support the inference that the defendants acted recklessly or with fraudulent intent.'") (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994)).

D.   Scheme Liability

The PSAC also alleges that Defendants have violated Rule 10b–5(a) and (c), under which it is unlawful "[t]o employ any device, scheme, or artifice to defraud" or "[t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person," respectively. *See* 17 C.F.R. § 240.10b-5(a) & (c); (PSAC ¶¶ 402, 406).   A plaintiff states a claim that the defendant has engaged in a deceptive or fraudulent scheme in violation of Rule 10b-5(a) and (c) by alleging that the defendant: "(1) committed a deceptive or manipulative act, (2) *with the requisite scienter*, (3) that the act affected the market for securities or was otherwise in connection with their purchase or sale, and that (4) defendant's actions caused the plaintiff's injuries." *IBEW Local 90 Pension Fund v. Deutsche Bank AG*, No. 11 Civ. 4209(KBF), 2013 WL 1223844, at *11 (S.D.N.Y. Mar. 27, 2013) (emphasis added).

"The PSLRA's pleading requirements regarding *misleading statements and omissions*[5] do not apply to claims that . . . are based on alleged violations of Rule 10b-5(a) and (c)." *In re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 492 (S.D.N.Y. 2005) (emphasis added); *accord In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 474-75 (S.D.N.Y. 2005).   However, subsection b(2) of the PSLRA, which requires that a plaintiff allege scienter with particularity, is applicable to a claim of scheme liability under Rule 10b-5(a) and (c).   15 U.S.C. § 78u-4(b)(2)(A); *In re Alstom*, 406 F. Supp. 2d at 475; *see also Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp.,*

---

[5] Subsection (b)(1) of the PSLRA states that a securities fraud action alleging a misleading statement or omission should specify in the complaint: "each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).

*Inc.*, No. 10-CV-864 (SLT)(RER), 2014 WL 3569338, at *7 (E.D.N.Y. July 18, 2014).[6]  As the

claim is based on a scheme to defraud, the heightened pleading standards of Federal Rule of

Civil Procedure 9(b) also apply.  *IBEW*, 2013 WL 1223844, at *11.

      Plaintiffs allege that "Defendants engaged in a scheme to defraud by securitizing defective

loans and selling the resulting certificates to unsuspecting investors such as Union Central."

(Letter Mot. at 11.)  However, Plaintiffs have not pleaded scienter with particularity in order to

assert this claim.  The PSAC lacks specific allegations that the Defendants actually received notice

of defects in the loans that were securitized and sold to Plaintiffs, and consequently that the

Defendants were acting with the intent to defraud Plaintiffs.  *Cf. IBEW*, 2013 WL 1223844, at *13

(finding a claim of a fraudulent scheme adequately alleged scienter, where the complaint pleaded

"multiple references to information available to senior management, specific questions asked by,

and presentations made to senior management" which contradicted the defendant's public

statements).

      Plaintiffs additionally fail to state a claim under subsections (a) and (c) of Rule 10b-5

because they impermissibly base their allegations on the same misrepresentations and omissions

concerning the loans' compliance with underwriting guidelines that supported their 10b-5(b)

claim.[7]  *See S.E.C. v. Kelly*, 817 F. Supp. 2d 340, 344 (S.D.N.Y. 2011) ("Scheme liability under

subsections (a) and (c) of Rule 10b-5 hinges on the performance of an inherently deceptive act

that is distinct from an alleged misstatement."); *see also In re Alstom*, 406 F. Supp. 2d at 475

(noting liability under both subsection (b) and subsections (a) and (c) of Rule 10b-5 can arise out

---

[6] Plaintiffs' citation to *IBEW* for the proposition that "claims that liability is premised on a fraudulent or deceptive scheme do not require compliance with the PSLRA's pleading requirements" is therefore taken out of context, as it suggests that a claim under Rule 10b-5(a) and (c) does not need to comport with the PSLRA at all.  (*See* Letter Mot. at 11 (citing *IBEW*, 2013 WL 1223844, at *11).)

[7] (*See* PSAC ¶ 2 ("Defendants not only *misrepresented* the nature and quality of loan underwriting that had been used in originating the loans, but they *concealed* their wrongful ongoing practice and *scheme* of intentionally securitizing loans that they knew were defective.") (emphasis added).)

of the same set of facts, where a plaintiff alleges "both that the defendants made misrepresentations in violation[] of Rule 10b-5(b), as well as that the defendants undertook a deceptive scheme or course of conduct that went beyond the misrepresentations").

*    *    *

In sum, Plaintiffs' allegations concerning the due diligence firms' reviews, CSFB's internal documents, the FCIC Report and the NYAG action are inadequate to plead the necessary strong inference of scienter to support a claim of common law fraud or the alleged violations of Section 10(b) and Rule 10b-5. Accordingly, Counts I and IV of the PSAC must be dismissed.[8]

## II.   **Remaining Claims**

The remaining causes of action asserted in the PSAC are claims of unjust enrichment (Count II) and control person liability under Sections 20(a) and 20(b) of the Exchange Act (Counts V and VI). The deficiencies identified in this Court's prior Order with respect to these claims have not been remedied in the PSAC. Dismissing the unjust enrichment claim is warranted because Plaintiffs have still not "articulate[d] how Defendants profited at Plaintiffs' expense or that equity and good conscience requires restitution." (*See* Order at 18-19.) Counts V and VI are also properly dismissed because Plaintiffs have not established a primary violation of the securities laws nor an unlawful act sufficient to state a claim under Section 20(a) and 20(b), respectively. (*See* Order at 17-18); *Rombach*, 355 F.3d at 177-78 (dismissing a Section 20(a) claim in light of the district court's proper dismissal of the primary violations of securities laws); *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 630 (S.D.N.Y. 1996) (dismissing a Section 20(b) claim because of the plaintiff's

---

[8] As a result of Plaintiffs' failure to allege an underlying fraud in the PSAC, the claim for aiding and abetting fraud (Count III) is likewise dismissed. (*See* Order at 18.)

failure to "show[] that a 'controlling person knowingly used the controlled person to commit the illegal act'") (quoting *Moss v. Morgan Stanley, Inc.*, 553 F. Supp. 1347, 1362 (S.D.N.Y. 1983)).[9]

## III.   **Leave to Amend**

Plaintiffs' inability to articulate or identify facts giving rise to a strong inference of scienter on the part of Defendants, in addition to the remaining deficiencies that persist in the PSAC, indicate that further leave to amend would be futile. Plaintiffs have provided this Court with no reason to believe that they can replead, in good faith, the factual allegations necessary to survive a motion to dismiss. *See Krys v. Pigott*, 749 F.3d 117, 134 (2d Cir. 2014) (internal citations omitted) ("Leave to amend may properly be denied if the amendment would be futile, as when the proposed new pleading fails to state a claim on which relief can be granted."). Accordingly, since granting Plaintiffs leave to amend would be futile, Plaintiffs' request for leave to amend is DENIED. *See Foman,* 371 U.S. at 182 (it is within the district court's discretion to deny leave to amend when amendment would be futile); *Absolute Activist*, 677 F.3d at 71 ("[A] request to replead should be denied in the event that amendment would be futile.").

## CONCLUSION

Plaintiffs' request for leave to amend is DENIED. The Clerk of the Court is directed to close this case.

Dated: New York, New York
       December 10, 2014

                                                    SO ORDERED.

                                                    *[signature]*
                                                    GEORGE B. DANIELS
                                                    United States District Judge

---

[9] Because all claims against Defendants have been dismissed, this Court does not address the Defendants' additional grounds for dismissal. (*See* Opp'n at 8.)